UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN MICHAEL GRECH,

        Plaintiff,

v.                                                                                    Case No. 8:20-cv-1254-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claims for period of disability and disability insurance benefits ("DIB"). After reviewing the administrative record and the parties' arguments, the undersigned concludes that the Administrative Law Judge ("ALJ") failed to address apparent conflicts between the jobs identified by the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") classification of these jobs. Thus, the Commissioner's decision is reversed and remanded for further consideration.

      **I.**     **Procedural Background**

Plaintiff applied for period of disability and DIB on August 2, 2017 (Tr. 181-183). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

64-77, 80-94).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 31-63).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-30).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff was born on October 19, 1976 and claims disability beginning April 1, 2017 (Tr. 181).  Plaintiff graduated from high school (Tr. 59).  His past relevant work experience includes jobs as a warehouse/stock associate and as a driver/unloader (Tr. 215).  Plaintiff alleges disability due to hypertension, asthma, chronic obstructive pulmonary disease (COPD), sleep apnea, depression, anxiety, nasal polyps, cellulitis, and high blood pressure (Tr. 65).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2020 and had not engaged in substantial gainful activity since April 1, 2017, the alleged onset date (Tr. 17).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: history of COPD, hypertension, migraine headaches, obstructive sleep apnea, status post C-PAP, morbid obesity, gastro esophageal reflux disease (GERD), and history of cocaine use (Tr. 17). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (*Id*).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with limitations.  Specifically,

> … the claimant can sit, stand, and/or walk for 6 hours in an 8-hour workday with normal breaks.  He should avoid climbing ropes, scaffolds, and ladders with five or more steps.  Additionally, the claimant can occasionally climb lesser ladders, stairs, and ramps, as well as occasionally crawl.  He can frequently balance, stoop, kneel and crouch as well.  Moreover, the claimant can frequently reach and handle, but should avoid concentrated exposure to extreme cold and extreme heat.  He should also avoid even moderate exposure to pulmonary and environmental irritants and industrial hazards.  Furthermore, the claimant cannot do work that is outdoors.

(R. 19).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 19-20).  Considering Plaintiff's impairments and the VE's assessment, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 23).  Rather, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (*Id.*).  Namely, the ALJ concluded that based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, Plaintiff can perform the requirements of the following jobs:  Ticket Seller (DOT 211.467-030), Ticket Taker (DOT 344.667-010), and Hand Packager (DOT 920.587-018) (Tr. 23-24).  The ALJ then found Plaintiff not disabled from April 1, 2017, through the date of the decision (Tr. 24).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits her ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform her past relevant work. If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled

to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV. Analysis

Plaintiff raises three issues on appeal – whether the ALJ's RFC assessment adequately accounts for Plaintiff's narcolepsy; whether the ALJ properly evaluated the opinions of Syed Hasan, M.D.; and whether the ALJ resolved the apparent inconsistencies between the VE's testimony and the DOT. After a thorough review of the record, the parties' submissions, and the applicable regulations, the Court concludes that reversal and remand for further consideration is required.

#### A. RFC determination

Plaintiff asserts the ALJ's RFC assessment did not adequately account for his diagnosis of narcolepsy. He claims that the medical evidence establishes his diagnosis and that his testimony confirms he "[falls] asleep all the time and spend[s] up to three hours per day sleeping." (Tr. 53).

As the Commissioner acknowledges, to meet his burden of proving disability, Plaintiff may not rely solely on a diagnosis and subjective complaints related to the diagnosis. *See* § 404.1520(c). Moreover, the ALJ provided ample support for his determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms, including his allegations of narcolepsy, were unsupported by the medical evidence (Tr. 19-22). To the extent that Plaintiff complains that the ALJ's decision suggests a finding that his narcolepsy "suddenly disappeared," even assuming Plaintiff's narcolepsy satisfied the twelve-month durational requirement and qualified as a severe impairment, Plaintiff fails to show that his narcolepsy significantly limits his ability to perform basic work activities to a greater extent than

6

already incorporated into the RFC. In other words, Plaintiff fails to show that his narcolepsy, whether a severe impairment or not, caused additional limitations on his ability to work beyond those already accounted for in the RFC. The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's functional limitations, including those related to his narcolepsy. Likewise, substantial evidence supports the ALJ's RFC determination that limits Plaintiff to a reduced range of light work.

### B. Medical opinions

In this case, the revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed his claims on August 2, 2017 (*see* Tr. 181-183). The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJ must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards an ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). And while the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[2] 20 C.F.R. § 404.1520c(b)(2).

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

8

Dr. Hasan, Plaintiff's primary care physician, first saw Plaintiff on April 2, 2018 (Tr. 625-626), after Plaintiff's October 2017 move from New York to Florida. Dr. Hasan diagnosed essential hypertension, mild intermittent asthma without complication, obstructive sleep apnea, narcolepsy due to underlying condition without cataplexy, gastroesophageal reflux disease with esophagitis, nasal polyps, and morbid obesity (Tr. 625-626). At a follow-up appointment on May 9, 2018, Dr. Hasan noted Plaintiff was experiencing an acute asthma flare up and prescribed prednisone and referred Plaintiff to a pulmonologist (Tr. 638). Pulmonologist Dr. Alok Kumar evaluated Plaintiff and indicated pulmonary function testing showed severe obstructive disease with wheezing, bronchospasm, and dyspnea (Tr. 644). When Plaintiff returned to Dr. Hasan in October 2018, Dr. Hasan noted that Plaintiff has frequent asthma flare ups and is following with the pulmonologist (Tr. 650). However, the doctor also noted that Plaintiff denied shortness of breath, pain with breathing chest congestion, and cough (*Id.*). Maria Posada, Dr. Hasan's physician assistant, saw Plaintiff for an annual check-up on February 6, 2019. Posada described Plaintiff as "generally doing good except for headaches really bad in the morning" (Tr. 653).

Dr. Hasan completed an RFC assessment in March 2019. Dr. Hasan checked boxes indicating Plaintiff can sit for two hours, can stand/walk for two hours, and would need to take unscheduled breaks every hour during an eight-hour workday. He opined that Plaintiff is able to sit for ten minutes at a time, stand/walk for ten minutes at a time, and needs to recline or lie down in excess of the typical fifteen-minute morning break, thirty-minute lunch break, and fifteen-minute afternoon break (Tr. 679-680).

The ALJ found Dr. Hasan's RFC assessment "not persuasive as the medical evidence of record denotes less physician limitations" (Tr. 22). The ALJ explained:

> The claimant did engage in heavy breathing at some examinations; however, the resulting examinations were largely unremarkable. The claimant did not show a need to lie down or take a break at the hearing as well.

(Tr. 22).

Regarding supportability, the ALJ characterized Dr. Hasan's exam findings as "largely unremarkable" (Tr. 22). Dr. Hasan saw Plaintiff only for an initial evaluation and a few return follow-up appointments. While Dr. Hasan diagnosed Plaintiff with asthma and COPD, and referred him to a pulmonologist, the most recent office note indicated he denied shortness of breath, pain with breathing, chest congestion, and cough (Tr. 650). When reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Considering this, the ALJ properly analyzed the supportability of Dr. Hasan's opinions in determining their persuasiveness, as required by 20 C.F.R. § 404.1520c(c).

Regarding consistency – the other key factor ALJs must consider under the new regulations – the ALJ compared Dr. Hasan's RFC assessment to the opinions of the DDS

consultants (Tr. 22). The ALJ opined that "[t]he opinions of the DDS consultants are more consistent with the entirely [sic] of the record, showing less physical limitation, and no evidence of manipulative restrictions" (Tr. 22). In evaluating the DDS consultants' opinions, the ALJ determined their opinions that Plaintiff can perform less than the full range of light activity with postural limitations "were well supported by the record and consistent with the medical evidence" (Tr. 22). The ALJ explained, "[p]ulmonary function testing showed ongoing respiratory problems, [but] examinations and x-rays were largely unremarkable, indicating an ability to perform light activity level work with some postural and environmental limitations" (*Id.*). The undersigned reiterates that the Court will "not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Bloodsworth,* 703 F.2d at 1239. Hence, upon consideration, the Court finds the ALJ sufficiently reviewed the evidence of record to determine the consistency of Dr. Hasan's opinion. As a result, the Court finds that there is substantial evidentiary support for the ALJ's evaluation of the persuasiveness of Dr. Hasan's opinions.

### C. Apparent conflicts

Finally, Plaintiff contends the ALJ erred in determining at step five that there were jobs that exist in significant numbers in the national economy that he can perform. If the ALJ obtains testimony from a VE to make this determination, the ALJ has an affirmative obligation to identify and resolve "apparent conflicts" between the VE testimony and the DOT, otherwise the ALJ's decision is not supported by substantial evidence. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018); *see* Social Security Ruling

("SSR") 00-4p, 2000 WL 1898704.³ It is not enough for the ALJ to simply ask the VE if there is an apparent conflict; the ALJ must make a "meaningful investigatory effort" to identify or uncover any apparent conflicts, explain, and resolve them. *Id.* at 1364.

Here, the ALJ posed a hypothetical to the VE comprising all of Plaintiff's impairments and specified a reduced range of light work limited to no more than "frequently reach[ing] and handl[ing]." (Tr. 60-62). In response, the VE testified that a person with those limitations could perform the jobs of ticket seller, ticket taker, and hand packager. (*Id.*). According to the DOT, however, two of those jobs, ticket taker and hand packager, require constant handling and fingering for two-thirds or more of the workday. DICOT 211.467-030, 1991 WL 671853 (ticket seller); DICOT 920.587-018, 1991 WL 687916 (hand packager). Plaintiff maintains that the ALJ erred by failing to resolve these apparent conflicts between the VE's testimony and the DOT job descriptions.⁴

The Commissioner suggests that the apparent conflicts were appropriately resolved by the VE's testimony that he specifically reduced the number of jobs from the full occupational base to account for Plaintiff's upper extremity limitations. With respect to

---

³ "When vocational evidence provided by a VE or [vocational specialist ("VS")] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, 2000 WL 1898704, at *4.

⁴ "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

12

the ticket tacker position, the VE testified that he "reduced those numbers from the full occupational base by approximately 60 percent,[5] and that was due to the limitations on the upper extremity." (Tr. 61). Similarly, the VE testified that the hand packager position "is classified at the medium level per the DOT, but positions exist at both the light level and the sedentary level" (*Id.*). The VE explained that "again, the job numbers will be at that light level, and I'm going to reduce those numbers again by 66 percent, and that's based on the restrictions of the upper extremity." (*Id.*).

The ALJ, however, failed to "elicit a reasonable explanation for the conflict." SSR 00-4p, 2000 WL 1898704, at *2. The ALJ did not inquire as to how the VE arrived at each percentage reduction. Without eliciting what other resources or experiences the VE relied upon, the ALJ could not "resolve the conflict by determining if the explanation given by the [VE] is reasonable and provides a basis for relying on the [VE] testimony rather than on the DOT information." *See, e.g. Raponi v. Comm'r of Soc. Sec.* No. 6:19-cv-1206-Orl-18LRH, 2020 WL 3086215, at *5 (M.D. Fla. May 18, 2020) (finding ALJ "obtained a reasonable explanation for the apparent conflict" satisfying SSR 00-4p where ALJ asked VE why she reduced the numbers of jobs available by 50% and VE explained that she relied on "her experience working as a rehabilitation counselor, providing job placement services, working directly with employers, analyzing the essential duties of the jobs and other resources such as Bureau of Labor Statistics, other occupational handbooks, seminars and workshops" as well as labor market surveys to different

---

[5] In his decision, the ALJ incorrectly stated that the number of ticket tacker jobs nationwide was reduced by 66 percent. (Tr. 24).

employers). Instead, the ALJ incorrectly found that the VE's "testimony [was] consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 24).

The Commissioner suggests that the ALJ's failure to investigate and resolve these apparent conflicts was harmless because there was no apparent conflict with the third job identified by the VE—ticket seller. While the ALJ made a specific finding that there are 220,000 ticket seller positions nationwide, he apparently treated all three occupations cumulatively for purposes of the "significant numbers" determination. (Tr. 24). "Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by [the ALJ]." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)). While 220,000 positions in the national economy is seemingly a significant number, the Court is hesitant to make the factual determination. *See id.* (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) ("[J]udicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and ... [because] the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'"). Where, as here, "additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition." *Id.*

### IV.

Accordingly, for the foregoing reasons, it is hereby **ORDERED**:

1. The Commissioner's decision is reversed and the case is remanded to the Commissioner for further administrative proceedings; and

2. The Clerk is directed to enter final judgment in Plaintiff's favor and close the case.

ORDERED in Tampa, Florida, on February 17, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE